**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
S. Mohammad Kazerouni, Esq. (SBN: 252835)
mike@kazlg.com
Matthew M. Loker, Esq. (SBN: 279939)
ml@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Attorneys for Plaintiff,*
Savvy of Boulder LLC

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SAVVY OF BOULDER LLC, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**<br><br>Plaintiff,<br><br>v.<br><br>**PLAINS ALL AMERICAN PIPELINE, L.P., A DELAWARE LIMITED PARTNERSHIP,**<br><br>Defendant. | **Case No.:**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES, RESTITUTION, CONTRIBUTION, INJUNCTIVE RELIEF, AND ANY AND ALL OTHER RELIEF THE COURT DEEMS PROPER**<br><br>**DEMAND FOR JURY TRIAL** |

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

**CLASS ACTION COMPLAINT**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

### INTRODUCTION

1. Plaintiff SAVVY OF BOULDER LLC ("Plaintiff" or "Savvy"), on behalf of itself as well as all others similarly situated, brings this Class Action Complaint for damages, restitution, contribution, injunctive relief, and any and all other relief the Court deems proper, against Defendant PLAINS ALL AMERICAN PIPELINE, L.P. ("Defendant" or "Plains"), based on Defendant's failure to adhere to statutory guidelines, failure to meet the requisite standard of care, and negligence which resulted in the release, disposal, and exfiltration, of hazardous contamination, namely petroleum and petroleum byproducts, at and near Santa Barbara County, which continues to spread, exacerbate, and contaminate previously uncontaminated areas, negatively impacting the local economy, particularly that which is reliant on tourism.

2. Plaintiff makes these allegations on personal knowledge as well as information and belief subject to an ongoing investigation by Plaintiff, Plaintiff's counsel, and regulatory agencies, among others, due to the continuing and ongoing nature of Defendant's violations.

3. Unless otherwise stated, Plaintiff alleges that any violations by Defendant were knowing and intentional, and that Defendant did not maintain procedures reasonably adapted to avoid any such violation.

4. Unless and until otherwise expressly indicated, the use of any Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

///
///
///
///

**JURISDICTION AND VENUE**

5.  Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff, an entity registered in the state of Colorado and conducting business in the State of California, seeks relief on behalf of a California class, which will result in at least one class member belonging to a different state than that of Defendant, a company with its principal place of business in the State of Texas and State of Incorporation in the State of Delaware.  Plaintiff also seeks three times actual damages per violation pursuant to Cal. Civ. Code § 1694.4, which, when aggregated among a proposed class number in the hundreds, exceeds the $5,000,000 threshold for federal court jurisdiction.  Therefore, both diversity jurisdiction and the damages threshold under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

6.  In the alternative, this Court also has Federal Question Jurisdiction based upon the federal causes of action discussed herein.  Supplemental Jurisdiction over Plaintiff's State Law claims is also appropriate pursuant to 28 U.S.C. § 1367.

7.  Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff conducts business in the County of Santa Barbara, California which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendant conducted business within this judicial district at all relevant times.

**PARTIES**

8.  Plaintiff is an entity registered in the state of Colorado.

9.  Plaintiff is, at all relevant times has, and continues to conduct business in the County of Santa Barbara, California.

10. Plaintiff is, at all relevant times has, and continues to hold a possessory interest in the property located at 911 State Street, Santa Barbara, California ("Plaintiff's Property") via a business and commercial lease, at which Plaintiff operates its business.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

11. Defendant is, and at all relevant times has been, a limited partnership registered under the laws of the State of Delaware. Defendant's current Delaware limited partnership status was filed on September 17, 1998 as File Number 2945678 as PLAINS ALL AMERICAN PIPELINE, L.P.

12. Plaintiff is informed and believes that Defendant operates through and/or on behalf of PAA GP, LLC, a Delaware limited liability company; Plains AAP, L.P., a Delaware limited partnership that is the sole member of PAA GP, LLC; Plains All American GP, LLC ("GP, LLC"), a Delaware limited liability company; Plains GP Holdings, L.P. ("PAGP"), a Delaware limited partnership that is the sole member of GP, LLC; and PAA GP Holdings, LLC, the general partner of PAGP.

13. At all relevant times, Defendant has been headquartered in and maintained its principal place of business in the State of Texas.

14. At all relevant times, Defendant has conducted business in the state of California, specifically owning and operating a pipeline system that included Line 901 which transported crude oil obtained from ExxonMobil's Santa Ynez fields at Las Flores Canyon to Defendant's Gaviota Pump Station in Santa Barbara County.

## GENERAL ALLEGATIONS

15. Plaintiff seeks damages, restitution, contribution, and any and all other relief the Court deems proper related to provable lost profits due to Defendant's failures and violations.

16. Plaintiff, like many other similarly situated businesses in Santa Barbara County, rely heavily on Santa Barbara's tourism to support business and generate profits, particularly the time period beginning in May and extending throughout the summer months, when tourism in Santa Barbara County is at its peak.

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

17. On May 19, 2015, Defendant's crude oil transport pipeline system, specifically Line 901 in Santa Barbara County, ruptured due to Defendant's inadequate maintenance, failure to make necessary replacements, subpar inspections, failure to monitor, failure to respond appropriately, and failure to adhere to statutory safety guidelines and mandates.

18. As a result, it is currently estimated that more than 100,000 gallons of crude oil was caused to exfiltrate, release, discharge, and dispose, into the surrounding environment, including nearby beaches and into the Pacific Ocean.

19. Due to the continuing exacerbation of crude oil throughout the beaches Pacific Ocean of Santa Barbara County, fishing in the general area has been halted indefinitely, and beach closures remain in effect. As a direct and proximate cause, tourists, either by choice or lack thereof, are not visiting Santa Barbara County as they were expected to and otherwise had in the past. Pertinently, this loss of business directly impacts Plaintiff's bottom line earnings, as well as other similarly situated Santa Barbara County businesses, including, but not limited to, retail businesses, hospitality establishments, as well as restaurant, wine, and bar establishments, among others.

**DEFENDANT'S FAILED PIPELINE**

20. Defendant's aforementioned pipeline system includes Line 901, which is a 24-inch diameter pipeline approximately 10.6 miles in length that transports crude oil from ExxonMobil's breakout storage tanks in Las Flores Canyon Oil & Gas Processing facility to Defendant's Gaviota Pump Station facility in Santa Barbara County (the "Failed Pipeline").

21. Defendant owns and operates a pipeline system facility for purposes of transporting oil through, within, and to counties nearby Santa Barbara County, as well as other parts of California.

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

22.  At all relevant times, Defendant has unilaterally owned and operated Line 901, exercising direct, active control over its transport, maintenance, oversight, repair, replacement, supervision, and general operation.

23.  Line 901 subsequently courses north to the Sisquoc Pump Station, before turning east past the Hallador, both of which are within Santa Barbara County. Thereafter, Line 901 transports oil onward into San Luis Obispo and Kern Counties.

24.  According to the United States Department of Transportation Pipeline and Hazardous Materials Safety Administration ("P&HMSA")'s Corrective Action Order ("CAO") issued to Defendant on May 21, 2015, a reportable accident occurred in the Failed Pipeline on May 19, 2015, resulting in the release, disposal, discharge, and exfiltration from "[Defendant's] Line 901 pipeline, resulting in the release of approximately 1700 to 2500 barrels of heavy crude oil (the "Failure")…The cause of the Failure has not yet been determined."[1]   The CAO reports that "[t]he Failure occurred near milepost 4 near Goleta, California, located within Santa Barbara County (the "Failure Site")."[2]

25.  The P&HMSA issued the CAO pursuant to its authority to do so under 49 U.S.C. § 60112. The CAO requires Defendant "to take the necessary and corrective action to protect the public, property, and the environment from potential hazards associated with the recent failure in [Defendant's] pipeline in Santa Barbara County, California."[3]

26.  The CAO reports that Defendant's Failed Pipeline was constructed from 1987 to 1990, consisting of a 0.344 inch wall thickness and X-65 high frequency electric resistance welded pipe manufactured by Nippon Steel.[4]

---

[1] See the P&HMSA's May 21, 2015 CAO, a true and correct copy of which is attached hereto as EX "A" at Pg. 1.
[2] *Id.*
[3] *Id.*
[4] *Id.* at Pg. 2 ¶ 1

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

27. Defendant's Failed Pipeline has a Maximum Operating Pressure ("MOP") of 1025 pounds per square inch ("psig") and a normal operating pressure of 650 psig.

28. In-line-inspections ("ILI") of the Failed Pipeline were conducted in June 2007, July 2012, and May 5, 2015. ILI reports identify and confirm 13 anomalies in the Failed Pipeline in 2007, 41 anomalies in 2007, and the May 2015 ILI revealed four areas of the Failed Pipeline "with pipe anomalies requiring immediate investigation and remediation in accordance with 49 CFR § 195.452(h)…Examination and measurements of three of these areas indicated extensive external corrosion…[which] ranged between 54 and 74% of the original pipe wall thickness…The fourth area to be investigated has not yet been completed."[5]

29. The Amended CAO also confirms that the Failed Pipeline is experiencing active external corrosion, including "metal loss of approximately 45% of the original wall thickness in the area of the pipe that failed on May 19," general external corrosion, indication of a longitudinally oriented opening approximately 6 inches in length, and degraded wall thickness to an estimated 1/16 of an inch.[6]

30. The P&HMSA's Amended CAO requires Defendant to take additional corrective actions with respect to both Line 901 as well as Line 903, which was not included in the original CAO, indicating that through continued investigation and analysis, Defendant's failures are increasing in scope, exacerbating the contamination at issue and spreading it to previously uncontaminated areas.[7] At a minimum, the P&HMSA estimates that the Failure has caused hazardous chemicals to spread several miles down

---

[5] Id. at ¶ 6; see also the Amended CAO issued by the P&HMSA on June 3, 2015, a true and correct copy of which is attached hereto as EX "B," at Pg. 1
[6] EX "B" at Pg. 2 ¶¶ 1-4
[7] Id. at Pg. 1

California's coastline.

## DEFENDANT'S INADEQUATE RESPONSE

31. Defendant's failure to adhere to safety guidelines and mandates increased the scope of the Failure, exacerbating the contamination and both allowing and actively causing it to spread to previously uncontaminated areas.

32. At approximately 11:30 a.m. on May 19, 2015, the Santa Barbara County Fire Department responded to odors near Refugio State Beach in Goleta, California which is inclusive in Santa Barbara County.

33. The National Response Center ("NRC") received multiple similar reports, beginning with NRC Report No. 1116950 at 12:53 p.m. from the Santa Barbara dispatch reporting an unknown oil sheen at Refugio State Beach, and NRC Report No. 116972 at 2:56 p.m. from the operator of Line 901, who discovered the Failure at approximately 1:30 p.m.

34. The Failure resulted in the release, discharge, and disposal of crude oil, which traveled southward though a nearby water drainage culvert approximately ¼ mile to Refugio State Beach, where the product entered the Pacific Ocean. It is estimated that the product has spread several miles down the coast."[8]

35. Delaying Defendant's response is the fact that Line 901 is "the only major pipeline that doesn't have auto shut-off," according to Deputy Director of Santa Barbara County's Energy and Minerals Division Kevin Drude. Although the auto shut-off valve is required for Santa Barbara County pipelines of the same nature as Line 901, Defendant successfully argued in the late 1980s that Line 901, among other Defendant owned pipelines, should be federally regulated as opposed to locally due to the fact that Line 901 is part of an interstate pipeline network.

///

///

---

[8] EX "A" at Pg. 2 ¶ 7-11

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

36. Thus, Defendant did not adhere to the local auto shut-off requirement, notwithstanding the fact that to do so is commonplace and consistent with the applicable standard of care. As a result, among multiple other reasons, Defendant failed to timely and appropriately respond to the Failure, further exacerbating the contamination plume at issue.

37. Defendant also has an extensive history of violations, infractions, regulatory oversight, failures to adhere to safety requirements, releases from pipelines similar to Line 901, property damage, and related incidents which impart knowledge on Defendant of the risks and dangers associated with Line 901. Defendant also failed to necessarily repair, replace, maintain, monitor, and regulate Line 901's operation in accordance with all local, state, and federal requirements to ensure safety to the environment and to the public.

38. Defendant's pattern of willful disregard and failure to adhere to appropriate local, state, and federal safety guidelines and mandates as well as its conscious decision not to repair and replace the Failed Pipeline as necessary, resulting in Defendant's increased and unjust profit, constitutes Defendant carrying on conduct with a willful and conscious disregard of the rights and safety of others and for the environment.

39. Based upon the conduct described herein, Defendant is guilty of oppression, fraud, and malice such that Plaintiff and the putative class members, in addition to actual damages, should recover punitive damages for the sake of example and by way of punishing Defendant.

40. Defendant has profited and continues unjustly profit from its failure to adhere to local, state, and federal safety guidelines and mandates as well as Defendant's failure to necessarily repair and/or replace the Failed Pipeline with knowledge of its defective and corroded nature.

///

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

41. The scope and extent of the contamination plume caused by the Failure continues to expand, negatively impacting and causing an existing and substantial risk to the surrounding environment, local wildlife both on and off shore, and local and nearby environmentally sensitive areas, as well as posing an imminent and substantial risk to human health.

42. As a result, commercial fishing has been halted indefinitely, and impacted beaches are closed until at least June 18, 2015, pending immediate and successful onshore clean-up. The full scope and extent of the contamination plume, both on and off shore, likely will not be adequately defined and delineated for some time, causing these on and off shore restrictions to remain in effect and continue to negatively impact the local economy. [9]

## TOURISM ECONOMY IN SANTA BARBARA COUNTY

43. According to a report prepared in 2013 for Visit Santa Barbara by Destination Analysts, Inc. entitled *Visit Santa Barbara – Santa Barbara South Coast Visitor Profile Study,* (the "South Coast Report"), approximately 6.1 million individuals visit the Santa Barbara South Coast annually. The South Coast Study found that this results in direct visitor spending of at least $4.0 Million, the generation and support of more than 12,000 jobs, and an annual generation of at least $46 Million in tax revenue. [10]

44. Santa Barbara's Transient Occupancy Tax ("TOT") is a general indicator of 'transient' or visiting guests to the City of Santa Barbara over a given period of time, sometimes referred to as a 'bed tax' and is imposed on visitors occupying a room in a motel, hotel, or similar establishment. Santa Barbara's current TOT is 12%, is governed by Santa Barbara Municipal Code Chapters

[9] Please note that the investigation into Defendant's actions and inactions providing the bases for this Complaint are involved in an ongoing investigation and analysis by local and federal authorities, as well as private parties, interested persons, and Plaintiff. Plaintiff, therefore, on behalf of itself and the associated Class, expressly reserve the right to update, amend, and/or supplement the information herein to the extent additional information becomes available.
[10] See the South Coast Report, a true and copy of which is attached hereto as EX "C" at Pg. 5

4.08 and 4.09, and is public information distributed by the City of Santa Barbara.

45. Indirect spending, including but not limited to retail, entertainment, and recreational activities, among others, increases these figures because tourists and visitors are not charged the TOT at establishments other than hotels and likewise hospitality establishments. The South Coast Report found that 45.2% of visitors to Santa Barbara County are single-day visitors. Therefore, the $4.0 Million in direct spending and more than 12,000 jobs generated accounts for only a fraction of spending and jobs reliant upon Santa Barbara's tourist industry.

46. Santa Barbara City reported that its April 2015 TOT grew by 3% compared to April of 2014. Additionally, through the first ten months of Santa Barbara's fiscal year, which ends June of 2015, Santa Barbara's TOT exceeded the first ten months of 2014's fiscal year by 11.2%. Each of these indicators show that Santa Barbara tourism in 2015 had thus far exceeded tourism for the year 2014, and local businesses, including Plaintiff and others similarly situated, expected and anticipated this trend to continue.[11]

47. Likewise, Santa Barbara City also reported that the sales tax in Santa Barbara, California for the most recent quarter available for public distribution which ended on December 31, 2014, was 2.5% higher than the same time period of the previous year.  To a lesser extent, increases in sales tax generation in Santa Barbara, California also indicate a healthy and prosperous tourism industry.[12] Thus, Plaintiff and similarity situated businesses also saw this reason to expect and anticipate a strong summer tourist season resulting in increased revenue.

///

---

[11] Note that May 2015's tax calculations for Santa Barbara, California have not yet been generated and made public by City officials. As a result, Plaintiff reserves the right to supplement and/or amend this information as necessary and in accordance with ongoing statistics in this regard.
[12] Id.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

48. Plaintiff is informed and believes, due to decreased profits in its establishment as well as on either personal knowledge or information and belief of relevant information for similarly situated businesses, that both Santa Barbara's TOT and sales tax generation for the time period following Defendant's oil spill will be negatively impacted. This is due to a direct and proximate result of Defendant's actions and inactions.

49. Plaintiff is informed, believes, and intends to establish that Defendant's actions and inactions will result in a continued downward, less than expected profit trend through Santa Barbara's peak summer tourism season and beyond, resulting in a continuing and ongoing negative economic impact on Plaintiff and similarly situated businesses.

## PLAINTIFF'S BUSINESS OPERATIONS

50. Plaintiff's business originated with a retail store in Boulder, Colorado, where Ms. Erica Dahl, owner and representative, previously resided.

51. Plaintiff's original store, *Savvy on Pearl* in Boulder, Colorado remains operative. These are the only two stores owned by the Plaintiff entity.

52. Ms. Dahl relocated to Santa Barbara in June of 2011 to open *Savvy on State* in Santa Barbara's historic Downtown State Street District. In part, Ms. Dahl did so in an effort to take business advantage of Santa Barbara's prosperous tourism industry.

53. Santa Barbara's historic Downtown State Street District is a major tourist draw in Santa Barbara where visitors seek retail, entertainment, and dining, among other things.

54. Immediately following Defendant's oil spill on the Santa Barbara coastline, there was a noticeable decline in business at local retailers and establishments, including Plaintiff's. In fact, news channel CNN arrived soon thereafter to document Memorial Day Weekend on the all but empty Santa Barbara harbor during a holiday in which the local economy would otherwise thrive.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

55. Upon review, Ms. Dahl learned that earnings for the month of May were approximately 20-25% lower than during May of 2014.

56. Upon either personal knowledge or information and believe, Plaintiff has learned that many other local businesses, including but not limited to retailers, hotels and hospitality establishments, restaurants, wineries, and bars, as well as recreational activity businesses have also seen a significant decline in business since Defendant's May 19th oil spill. Most notably, many local businesses similarly situated to Plaintiff have found a revenue decrease reaching and even exceeding 50% in comparison to Memorial Day weekend of 2014.

57. Plaintiff intends to establish that due to Defendant's May 19th oil spill, the continued beach closures, commercial fishing restrictions, ongoing investigation and cleanup, Plaintiff's business, as well as those similarly situated, will continue to be directly and negatively impacted economically. This could potentially result in not only revenue loss, but personnel cutbacks and business closures as well.

## CLASS ALLEGATIONS

58. Plaintiff realleges and incorporates by reference all allegations contained herein as if fully set forth herein.

59. Plaintiff brings this action, on behalf of itself and all others similarly situated (the "Class").

60. Plaintiff represents, and is a member of, the Class, consisting of:

> All entities and persons conducting business within Santa Barbara County, California with an economic reliance upon the tourism industry, specifically including but not limited to retailers, hospitality and hotel establishments, restaurants, bars, and wineries, as well as recreational activity businesses.

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

61. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the hundreds, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter and to conserve judicial resources.

62. There is a well-defined community of interest in the litigation, and Plaintiff is a proper representative of the Class because:

   a. *Numerosity*: The potential members of the Class as defined are so numerous that joinder of all the members of the Class impracticable. Joinder of all members of the proposed class is, therefore, not practicable.

   b. *Ascertainability***:** Although the class is large and may contain hundreds of businesses and individuals, the precise number currently unknown but can be easily ascertained. The class, although large, is defined within the geographical region of Santa Barbara County, allowing for ascertainability through routine and commonly accepted notice mechanisms such as local newspapers or other publications. Santa Barbara City TOT and sales tax records will also assist ascertaining members of the class, as well as additional business and revenue information available to the public.

   c. *Commonality*: There are questions of law and fact common to Plaintiff and the Class that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, without limitation:

      i) Whether Defendant's actions and/or inactions were negligent;

      ii) Whether Defendant constructed, owned, operated, maintained, regulated, supervised, repaired, and monitored Line 901 in accordance with applicable standard of care;

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

iii) Whether Defendant's actions and/or inactions were in compliance with applicable guidelines, mandates, and statutes;

iv) Whether Defendant's actions and/or inactions have violated local, state, and/or federal law;

v) Whether Defendant is strictly liable as a matter of law for its actions and/or inactions;

vi) Whether Defendant knowingly or recklessly violated applicable guidelines, mandates, and statutes which resulted in Defendant's profit;

vii) Whether Defendant knowingly or recklessly violated local, state, and/or federal law;

viii) Whether Defendant's actions and/or inactions impacted Plaintiff and other members of the Class's free use and enjoyment of land they own and/or have a possessory interest in;

ix) Whether Defendant's actions and/or inactions directly and proximately negatively impacted tourism in Santa Barbara County following Defendant's oil spill from Line 901;

x) Whether Defendant's actions and/or inactions directly and proximately resulted decreased business and decreased revenue on the part of Plaintiff and members of the Class

d. ***Typicality***: Plaintiff's claims are typical of the claims of the Class. Plaintiff and Class members have lost and will continue to lose profits as a direct and proximate cause of Defendant's actions and/or inactions.

e. ***Adequacy of Representation***: Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the class members. Plaintiff's interests do not conflict with those of class members. Counsel who represent Plaintiff are competent and experienced in litigating large class actions, and will devote sufficient

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

time and resources to the case and otherwise adequately represent the Class.

f.   ***Superiority of Class Action:*** A Class Action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Plaintiff and class members have suffered or may suffer loss in the future by reason of Defendant's unlawful policies and/or practices of not complying with the statutes described herein.  Certification of this case as a class action will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Certifying this case as a class action is superior because it allows for efficient and full restitution to class members, and will thereby effectuate California's strong public policy of protecting the California public from violations of its laws. If this action is not certified as a Class Action, it will be impossible as a practical matter for many or most class members to bring individual actions to recover monies due from Defendant, due to the relatively small amounts of such individual recoveries relative to the costs and burdens of litigation.

63.  Plaintiff contemplates providing notice to the putative class members by direct mail in the form of a postcard and via publication.

64.  Plaintiff requests certification of a hybrid class combining the elements of Fed. R. Civ. P. 23(b)(3) for monetary damages and Fed. R. Civ. P. 23(b)(2) for equitable relief.

///

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

**CLASS CAUSES OF ACTION CLAIMED BY PLAINTIFF**

**FIRST CAUSE OF ACTION**

**VIOLATION OF OIL POLLUTION ACT OF 1990, 33 U.S.C. § 2701, ET SEQ.**

65. Plaintiff realleges and incorporates by reference all allegations contained herein as if fully set forth below.

66. The Federal Oil Pollution Act defines a responsible party as including "any person owning or operating a pipeline." (33 U.S.C. § 2701(32)(E)). At all relevant times, Defendant has owned and operated Line 901, AKA the Failed Pipeline, qualifying Defendant as a responsible party under the Federal Oil Pollution Act.

67. Defendant also qualifies as a responsible party under the Federal Pollution Act as a transporter of petroleum and petroleum byproducts via acceptance for transport of oil by way of the Failed Pipeline. Defendant also dictates the destination of this transport.

68. The Federal Oil Pollution Act defines facility expansively, and includes any device used for "producing, storing, handling, transferring, processing, or transporting oil." (*Id*. at (9)). Line 901, AKA the Failed Pipeline, qualifies as a facility under the Federal Oil Pollution Act.

69. Defendant is both the owner and operator of a facility for purposes of the Federal Oil Pollution Act.

70. Defendant's Failure described herein, specifically its failure to adequately maintain, oversee, replace, repair, monitor, or operate the Failed Pipeline, caused the discharging, spilling, leaking, pouring, omitting, and releasing of oil from the Failed Pipeline into the surrounding environment, including the Pacific Ocean.

71. The term "navigable waters" is defined by the Federal Oil Pollution Act to include the waters of the United States, including the territorial sea. The Pacific Ocean qualifies as waters of the United States.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

72. Defendant's Failure described herein, therefore, caused the discharge of oil into the navigable waters and adjoining shorelines.

73. Defendant's Failure described herein, poses a substantial threat of continued discharge of oil into the navigable waters and adjoining shorelines.

74. As a result of Defendant's Failure described herein, Plaintiff and the Class have suffered damages in the form lost profits and impairment of earning capacity.

75. Plaintiff and members of the Class have and will continue to also suffer damages in the form of economic loss resulting from the impairment of Plaintiff and members of the Class to successfully conduct business on properties upon which they have a possessory or ownership interest.

76. Thus, Defendant is liable to Plaintiff and the Class pursuant to the Federal Oil Pollution Act.

### SECOND CAUSE OF ACTION

### STRICT LIABILITY UNDER CAL. GOV. CODE § 8670, ET SEQ.

77. Plaintiff realleges and incorporates by reference all allegations contained herein as if fully set forth below.

78. Defendant is a responsible party as defined in Ca. Gov. Code Section 8670.3(w) because Defendant is the transporter of oil and Defendant is an entity that accepts responsibility for oil and its transport.

79. Oil is defined within the Act to include "any kind of petroleum, liquid hydrocarbons, or petroleum products" (Cal. Gov. Code 8670.3(n)), which Defendant accepted for transport and determined the destination facility.

80. Defendant is also a responsible party as defined in Ca. Gov. Code Section 8670.3(w) because Defendant owns and operates a facility within the meaning of the Act, namely Line 901 AKA the Failed Pipeline.

///

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

81. Defendant's ownership, operation, and the acts and omissions described herein constitute active and hands on control over the Failed Pipeline and active and hands on contribution to its Failure.

82. Facility is defined within the Act to include "[a] pipeline that transports oil." (*Id*. at (g)(1)(A)). Line 901, i.e. the Failed Pipeline, constitutes a facility for purposes of the Act.

83. Defendant caused a discharge, spill, oil spill, and release of oil into waters of the state not authorized by any government entity, which include the Pacific Ocean.  This occurred on May 19, 2015 during the Failure described and set forth herein, in which the Failed Pipeline caused an exorbitant amount of crude oil to be spilled and released into the environment surrounding the Failed Pipeline as well as the nearby Pacific Ocean.

84. Plaintiff is entitled to damages set forth in Cal. Gov. Code Section 8670.56.5, specifically including but not limited to Plaintiff's loss of taxes, royalties, and net profits caused by Defendant's Failure resulting in injury and impairment to Plaintiff's ability to successfully conduct business on the property upon which it maintains a leasehold. Additionally, Plaintiff has experienced and continues to experience a loss of profits and impairment to earning capacity due to Defendant's Failure described herein.

### THIRD CAUSE OF ACTION

### STRICT LIABILITY DUE TO ULTRAHAZARDOUS ACTIVITIES

85. Plaintiff realleges and incorporates by reference all allegations contained herein as if fully set forth below.

86. At all relevant times, Defendant has unilaterally owned and operated Line 901, AKA the Failed Pipeline, exercising direct, active control over its transport, maintenance, oversight, repair, replacement, supervision, and general operation.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

87. Defendant was, at all relevant times, in sufficient control of the Failed Pipeline to have known of the threatened release and discharge of oil and associated hydrocarbons and to have prevented the resulting contamination. Defendant knew or should have known that its operation of the Failed Pipeline would have, and did, cause the contamination described herein.

88. Defendant's aforementioned transport, control, and supervision over oil constitutes an ultrahazardous activity due to the oil's toxic, hazardous, and flammable nature. Any release of said oil by way of Defendant's Failed Pipeline would cause an immediate negative impact on the surrounding and nearby environment and pose a threat to human health.

89. Defendant's failure to exercise due and reasonable care, which it had a duty to do, resulted in the spill, release, discharge, and disposal of the hazardous substance into the surrounding and nearby environment, and has spread for miles down the California coastline by way of the Pacific Ocean.

90. Plaintiff and the Class have been harmed by Defendant's aforementioned failure because Plaintiff's decreased earning capacity, profit, and general business damages were the direct and proximate result of Defendant's acts and omissions.

91. Plaintiff's injuries are the type of harm that would be reasonably anticipated to be created as the result of a Failure such as Defendant's Failed Pipeline described herein because the immediate negative impact on local tourism and the local economy is known, foreseeable, anticipated, and likely to occur as a result. Defendant had personalized knowledge of this anticipated risk due to its previous history of violations, infractions, regulatory oversight, and similar spills to the Failure at issue in the instant Action.

///

///

///

92. Defendant was a substantial factor in causing the Failure described herein, namely the spill, release, and discharge of oil into the environment and nearby Pacific Ocean via Defendant's Failed Pipeline, which ultimately caused and continues to cause Plaintiff's harm.

### FOURTH CAUSE OF ACTION

#### NEGLIGENCE

93. Plaintiff realleges and incorporates by reference all allegations contained herein as if fully set forth below.

94. Plaintiff is informed and believes, and thereon alleges, that Defendant's Failed Pipeline caused sudden and accidental releases of petroleum and petroleum byproducts and associated hazardous substances into the surrounding environment, which was then able to travel towards and onto Refugio Beach and surrounding beaches and into the Pacific Ocean. It is estimated that the contamination plume has spread multiple miles down the coastline. As a direct and proximate result of Defendant's sudden and accidental releases due to Defendant's negligent oversight, supervision, monitoring, repair, replacement, and/or operation of the Failed Pipeline, the tourism industry in Santa Barbara County has and will continue to be negatively impacted.

95. Defendant, particularly in dealing with hazardous substances, owed a duty to Plaintiff and other members of the community to exercise reasonable and ordinary care, which it failed to do with respect to Defendant's negligent oversight, supervision, monitoring, repair, replacement, and/or operation of its Failed Pipeline.

96. Defendant breached its duty by negligently causing, permitting, failing to abate, and/or contributing to the contamination described herein.

97. As a direct and proximate cause, Defendant's acts and omissions have caused an immediate and ongoing decrease in tourism in Santa Barbara County.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

98. As a result, Plaintiff's business, as well as those similarly situated in the Class, have and will continue to be damages, both economically and otherwise. These short-term damages are combined with long-term negative impacts to Plaintiff's business, business reputation, ability to maintain employees, due to ongoing decreased tourism to Santa Barbara County caused by Defendant's acts and omissions.

99. As a proximate result of Defendant's negligence, Plaintiff's costs also include attorneys' fees and consultants' fees incurred as a direct and proximate result of Defendant's negligence.

100. Due to the egregious violations alleged herein, as well as Defendant's history of similar violations, Plaintiff asserts that Defendant breached Defendant's duties in an oppressive, malicious, despicable, gross and wantonly negligent manner.   As such, said conduct Defendant's conscious disregard for Plaintiff's, as well as the putative class member's, rights and entitles Plaintiff and the putative class members to recover punitive damages from Defendant.

### FIFTH CAUSE OF ACTION

### NEGLIGENCE PER SE

101. Plaintiff realleges and incorporates by reference all allegations contained herein as if fully set forth below.

102. The foregoing acts and/or omissions violate California Civil Code Sections 3281-3282, 3479; California Health & Safety Code Sections 5411, et seq.; California Water Code Sections 13000, et seq.; and Fish & Game Code Sections 5650, et seq., which provide a standard of care and duty of care by which Defendants are held.

103. Plaintiff and the Class are in the class of persons protected under these statutes due to their status as nearby landowners and tenants.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

104. Defendant breached said duties of care thereby constituting negligence per se by Defendant's failure to exercise due care to prevent the release and migration of hazardous substances identified in this Complaint.

105. California Civil Code Section 3281 authorizes compensation for any person who suffers a loss at the detriment of another.

106. Defendant violated California Civil Code Section 3479, California Health & Safety Code Sections 5411, et seq.; California Water Code Sections 13000, et seq.; and Fish & Game Code Sections 5650, et seq., by allowing contamination to continue to spread to surrounding areas, exacerbating the plume and causing Plaintiff damages.

### SIXTH CAUSE OF ACTION

### CONTINUING PRIVATE NUISANCE

107. Plaintiff realleges and incorporates by reference all allegations contained herein as if fully set forth below.

108. Defendant's actions and inactions caused, maintained, and/or permitted the contamination alleged in this action by its negligence, intentional or otherwise, actionable acts, and/or omissions.

109. Defendant created the contamination plume at issue, which is harmful to both human health and the environment and interferes with Plaintiff's comfortable use and enjoyment of the property it has a possessory interest in by negatively impacting Plaintiff's ability to successfully operate its business thereupon due to decreases and continued decreases in tourism and associated direct and indirect revenue as a proximate cause of Defendant's Failure described herein.

110. Defendant was, at all relevant times, in sufficient control of the Failed Pipeline to have known of the threatened release of oil and associated hydrocarbons and to have prevented the resulting contamination. Defendant knew or should have known that its operation of the Failed Pipeline would have, and did, cause the contamination described herein.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

111. Despite knowledge and forewarning, Defendant failed to take reasonable steps to prevent the Failure which resulted in the contamination at issue.

112. Defendant failed to take reasonable steps to abate the contamination at issue, which continues to spread to previously uncontaminated areas. The contamination plume is, however, abatable, and, therefore, it is continuing in nature. This also confirms that Defendant has knowingly maintained the nuisance, i.e. the contamination at issue.

113. Plaintiff did not consent to the ongoing damage to the use and enjoyment of its property as a result of Defendant's actions and inactions.

114. After having a reasonable opportunity to do so, Defendant has failed to take reasonable measures to properly abate the contamination described herein.

115. As a direct and proximate cause, Defendant's acts and omissions have caused an immediate and ongoing decrease in tourism in Santa Barbara County.

116. As a result, Plaintiff has and will continue to suffer damages, both economic and otherwise.

117. The contamination described herein constitutes a nuisance within the meaning of Section 3479 of California Civil Code.

118. Plaintiff is informed and believes, and on that basis alleges, that the contamination is continuing and abatable.

119. As a proximate result of the nuisance, Plaintiff has and will continue to suffer damages.

### SEVENTH CAUSE OF ACTION

### NUISANCE PER SE

120. Plaintiff realleges and incorporates by reference all allegations contained herein as if fully set forth below.

121. The contamination constitutes a continuing nuisance within the meaning of California Water Code Section 13050(m), and Section 3479 of California Civil Code.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

122. Plaintiff is in the class of persons protected under these statutes from the Defendant.

123. Plaintiff is in the class of persons protected under these statutes from Defendant and its violations thereof due to the fact that the Defendant has, at all times relevant, owned, operated, maintained, supervised and/or controlled the Failed Pipeline.

124. Defendant violated California Civil Code Section 3479 by their failure to properly abate the contamination, and by allowing contamination to continue to spread.

125. As a proximate result of the nuisance per se, Plaintiff has and will continue to suffer damages.

### EIGHTH CAUSE OF ACTION

### PUBLIC NUISANCE

126. Plaintiff realleges and incorporates by reference all allegations contained herein as if fully set forth below.

127. The contamination near Plaintiff's Property constitutes a public nuisance within the meaning of California Water Code Section 13050(m), and California Civil Code Sections 3479 and 3480.

128. Plaintiff is informed and believes, and on that basis alleges, that the contamination is continuing and abatable.

129. As a direct and proximate cause, Defendant's acts and omissions have caused an immediate and ongoing decrease in tourism in Santa Barbara County.

130. As a proximate result of the nuisance, a substantial number of members of the public are affected, including those in the Class similarly situated to Plaintiff, specifically those businesses reliant on the tourism industry in Santa Barbara County.

///

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

131. Plaintiff has suffered, and will continue to suffer, harm that is different from the type of harm suffered by the general public as a result of the public nuisance, as alleged herein, because Plaintiff has incurred, and will continue to incur, costs and expenses to investigative and respond to the contamination. Additionally, Plaintiff has suffered damage to Plaintiff's Property.

### NINTH CAUSE OF ACTION

### PUBLIC NUISANCE PER SE

132. Plaintiff realleges and incorporates by reference all allegations contained herein as if fully set forth below.

133. Plaintiff alleges that the Defendant's conduct, which has resulted in contamination and constitutes a public nuisance, and is a violation of California Water Code Sections 13050(m), 13304, 13350, and 13387, and California Health & Safety Code sections 5411, 5411.5, and 117555, the purposes of which are to set a standard of care or conduct to protect Plaintiff, and all persons and property of the general public at large, as well as the environment, from the type of conduct engaged in by Defendant. Therefore, such improper activities and violations constitute a public nuisance per se.

134. Defendant has failed to comply with the state law as detailed above. Plaintiff has sustained special injury as a result of this public nuisance, as described herein. As a further direct and proximate cause of the public nuisance per se created by Defendant, Plaintiff has suffered damages as previously described herein, including other consequential, incidental, and general damages to be proven at trial. Plaintiff seeks abatement of the public nuisance, and all other legally available costs and damages.

135. Plaintiff further requests that the public nuisance, as described herein, be enjoined or abated.

///

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## TENTH CAUSE OF ACTION

### DANGEROUS CONDITION OF PUBLIC PROPERTY

136. Plaintiff realleges and incorporates by reference all allegations contained herein as if fully set forth below.

137. Plaintiff is informed and believes, and thereon alleges that at all relevant times, Defendant owned, operated, maintained, supervised, and/or controlled the Failed Pipeline.

138. Plaintiff is informed and believes, and thereon alleges that at all relevant times, Defendant's Failed Pipeline was in a dangerous condition in that Defendant knew it was defective and at risk for failures. The subsequent Failure caused the contamination at issue and described herein. The contamination described herein was a reasonably foreseeable risk of the dangerous condition of Defendant's Failed Pipeline.

139. Plaintiff is informed and believes, and thereon alleges that Defendant knew or should have known or been able to discover the dangerous condition of the Failed Pipeline for a sufficient period of time to have protected against it. Despite this knowledge, Defendant failed to respond by either maintaining the Failed Pipeline, fixing it, replacing it, removing its defective areas, or otherwise properly responding to the hazardous wastes or substances associated risks.

140. As a direct and proximate cause, Defendant's acts and omissions have caused an immediate and ongoing decrease in tourism in Santa Barbara County.

141. As a direct and proximate result of the dangerous condition of the Defendant's Failed Pipeline, Plaintiff was, and continues to be injured in that its business, as well as businesses of those in the Class, are negatively impacted both economically and otherwise. Such costs also include attorneys' fees and consultants' fees incurred as a direct and proximate result of said dangerous condition.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the Court grant Plaintiff and the Class members damages against Defendant and relief as follows:

- That this action be certified as a Class Action, Plaintiff be appointed as the representatives of the Class, and Plaintiff's attorneys be appointed Class counsel;

- An order requiring imposition of a constructive trust and and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and all members of the Class and to restore to Plaintiff and members of the Class all funds acquired by means of any act or practice declared by this court to be an unlawful, fraudulent, or unfair business act or practice, in violation of laws, statutes or regulations, or constituting unfair competition;

- An order permanently enjoining Defendant from operating a pipeline in Santa Barbara County without adequate safety and response measures;

- For all recoverable compensatory, statutory, and other damages sustained by Plaintiff and the classes;

- For costs;

- For injunctive relief, including public injunctive relief;

- For treble damages;

- That Plaintiff and the Class be awarded reasonable attorneys' fees and costs of this suit pursuant to Code of Civil Procedure § 1021.5, and California Civil Code § 1780, and/or other applicable law;

- Punitive damages pursuant to Cal. Civ. Code §3294;

- Punitive damages according to proof as to the Fourth Cause of Action against Defendant; and,

///

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

- Any and all other relief as this Court may deem necessary or appropriate.

Dated:  June 11, 2015                               Respectfully submitted,

                                         **KAZEROUNI LAW GROUP, APC**

                                         By: ____/s/ Matthew M. Loker____
                                              MATTHEW M. LOKER, ESQ.
                                              ATTORNEY FOR PLAINTIFF

**DEMAND FOR JURY TRIAL**

142. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff and The Class are entitled to, and demand, a trial by jury.

Dated:  June 11, 2015                               Respectfully submitted,

                                         **KAZEROUNI LAW GROUP, APC**

                                         By: ____/s/ Matthew M. Loker____
                                              MATTHEW M. LOKER, ESQ.
                                              ATTORNEY FOR PLAINTIFF